IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

ROBERT BREWER,

    Plaintiff,

v.

MARGARET IMMEL BREWER, *et al.*,

    Defendants.

Civil Action No.
3:18-CV-0399 (GLS/DEP)

---

APPEARANCES:

FOR PLAINTIFF:

ROBERT BREWER, *Pro Se*
P.O. Box 1004
Johnson City, NY 13790

FOR DEFENDANTS:

NONE

OF COUNSEL:

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

ORDER, REPORT, AND RECOMMENDATION

    This action was commenced by *pro se* plaintiff Robert Brewer against his former spouse and his two sons. Plaintiff's complaint, like others he has filed with this court, recounts a series of domestic disputes disguised as violations of the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. Accompanying plaintiff's complaint is an application to proceed in the matter *in forma pauperis* ("IFP"). Also pending before the court is plaintiff's request for access to the court's Case Management/Electronic Case Filing ("CM/ECF") system. Those materials have all been forwarded to me by the clerk of the court for review. For the reasons set forth below, plaintiff's IFP application is granted, his request for access to CM/ECF is denied, and I recommend that his complaint be dismissed with leave to replead.

I.   BACKGROUND

The allegations in plaintiff's complaint are not particularly transparent, making it difficult to discern the basis for his RICO claims. It is clear, however, that the claims involve allegations of conduct taken against plaintiff by his former wife, Margaret Immel Brewer ("Margaret"), and plaintiff's two sons, Robert Martin Brewer ("Robert Martin") and Eric Channing Brewer ("Eric Channing"), over a period of time dating back at least to 1996. *See generally* Dkt. No. 1. The following background comprises a summary of plaintiff's allegations, as liberally construed by the court.

In 1996, while plaintiff and Margaret were still married, plaintiff's wages were garnished, allegedly due to unpaid New York State taxes by

Margaret. Dkt. No. 1 at 4. Plaintiff enrolled Margaret in a New York State tax amnesty program, which reduced the amount owed. *Id.* at 5. The couple was also audited in and around the same time by the United States Internal Revenue Service ("IRS"), resulting in a finding that they owed $1,200. *Id.* Plaintiff suspects that Margaret's father paid the amount owed. *Id.*

Plaintiff alleges that he authored and published a book, and that he acquired 400 unsold copies of the publication at an unidentified time. Dkt. No. 1 at 5. At the time of the IRS audit, the copies of the unsold books were stored in the basement of a building located in Brooklyn, New York. *Id.* In or about 2005, when plaintiff asked Robert Martin what happened to the inventory of books, Robert Martin did not answer. *Id.* Although this accusation is not explicitly set forth in plaintiff's complaint, it appears that plaintiff believes that Robert Martin stole the books from him.

Plaintiff next alleges that Margaret bribed a New York State Supreme Court Justice to issue a restraining order protecting her from plaintiff. Dkt. No. 1 at 6. The lawyer who represented Margaret during the couple's divorce was allegedly acquainted with another attorney, who plaintiff identifies as the Supreme Court Justice's "fixer." *Id.* Margaret allegedly paid the Supreme Court Justice money, through her attorney and

the Justice's fixer, to issue a restraining order in her favor. *Id.* Plaintiff alleges that, following this incident, the Supreme Court Justice and his fixer were charged with and convicted of unidentified crimes. *Id.* Margaret's attorney also allegedly stole plaintiff's passport during a court proceeding on an unidentified date and gave it to Margaret. Dkt. No. 1 at 6-7.

Sometime between 2000, the year that plaintiff and Margaret divorced, and 2005, Margaret allegedly falsely reported a debt that she incurred as plaintiff's to credit reporting agencies. Dkt. No. 1 at 7. Plaintiff contends that the credit reporting agencies did not investigate whether the debt belonged to plaintiff before transferring it to his credit report. *Id.* Similarly, Robert Martin "collaborated with student loan mogul Sallie Mae to shift $18,000 in student loan debt he incurred . . . onto plaintiff's credit report." *Id.* Plaintiff apparently attended college on scholarship and incurred no student loan debt whatsoever. *Id.* Because of plaintiff's allegedly fraudulent (and presumably poor) credit rating, plaintiff was forced to accept a car loan with a nine percent interest rate. *Id.* at 8.

In 2010, plaintiff discovered that the water bill connected to the marital home of plaintiff and Margaret had not been paid "for some time." Dkt. No. 1 at 8. The New York City Department of Environmental

Protection ("NYCDEP"), the agency responsible for issuing water bills, assigned the debt to plaintiff until plaintiff challenged the debt. *Id.* at 9. In the fall of 2017, plaintiff filed a notice of claim against the NYCDEP alleging that Margaret, Robert Martin, and Eric Channing collaborated to falsely assign the water bill arrearage to plaintiff. *Id.* Although the claim has been processed, it remains pending. *Id.*

II.   DISCUSSION

    A.   Plaintiff's IFP Application

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1).[1] In this instance, plaintiff's IFP application states that he receives $1,168.00 per month in income, but the application otherwise does not describe, as required, the source of the income. Dkt. No. 2 at 1.

---

[1] The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

Nevertheless, in light of plaintiff's monthly expenses as described in his application, I find that he meets the requirements for IFP status and his motion to proceed without prepayment of fees is granted.[2]

    B.    Plaintiff's Complaint

        1.    Standard of Review

Because I have found that plaintiff meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties

---

[2] Plaintiff is reminded that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

6

have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g.*, *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.'" *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is

guided by applicable requirements of the Federal Rules of Civil Procedure. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

8

suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### 2. Analysis

Plaintiff's complaint asserts civil RICO violations under 18 U.S.C. § 1961 *et seq. See generally* Dkt. No. 1. To state a claim for a civil RICO violation, a complaint must plausibly allege that (1) defendants violated 18 U.S.C. § 1962, (2) the plaintiff suffered an injury to his business or property, and (3) the injury was caused by the violation of section 1962. *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). As discussed below, because plaintiff's complaint does not satisfy the first element, I recommend its dismissal.

Addressing the first element, "[u]nder any prong of [section] 1962, a plaintiff in a civil RICO suit must establish a 'pattern of racketeering activity.'" *GICC Capital Corp. v. Tech. Fin. Grp.*, 67 F.3d 463, 465 (2d Cir. 1995) (quoting 18 U.S.C. § 1962); *accord, Spool*, 520 F.3d at 183. "A pattern of racketeering" is defined as "at least two acts of racketeering activity, . . . the last of which occurred within ten years . . . after the

commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5); *accord, Spool*, 520 F.3d at 183. The definition of "racketeering activity" includes robbery, bribery, extortion, wire fraud, and mail fraud, 18 U.S.C. § 1961(1), all of which are crimes listed and identified in plaintiff's complaint as having been committed by the defendants in this case.[3] Dkt. No. 1 at 4-9. Plaintiff's complaint, however, does not plausibly allege two predicate acts.

Turning first to plaintiff's allegations that the defendants committed robbery, the relevant RICO provision explains that robbery constitutes racketeering activity to the extent it "is chargeable under State law and punishable by imprisonment for more than a year." 18 U.S.C. § 1961(1). In New York, the least severe degree of robbery is robbery in the third degree, N.Y. Penal L. § 160.05, and is a class D felony, meaning it is punishable by at least one year imprisonment. N.Y. Penal L. § 70.00. "A person is guilty of robbery in the third degree when he forcibly steals property." N.Y. Penal L. § 160.05. In New York, in relevant part, "[a] person forcibly steals property and commits robbery when, in the course of

---

[3] Plaintiff also alleges that Margaret's attorney stole his passport and gave it to Margaret during a court proceeding. Dkt. No. 1 at 6-7, 12. Based on the allegations in the complaint, however, such conduct only amounts to larceny under New York State law, N.Y. Penal L. § 155.05, which does not constitute racketeering activity under 18 U.S.C. § 1961(1).

10

committing a larceny, he uses or threatens the immediate use of physical force upon another person[.]" N.Y. Penal L. § 160.00. Because there are no allegations whatsoever in plaintiff's complaint that any of the defendants used physical force upon him or threatened to use physical force upon him at any time, plaintiff's complaint does not plausibly state that defendants committed robbery as a predicate act under 18 U.S.C. 1961(1).

With respect to plaintiff's allegations that defendants committed mail and wire fraud,[4] they are subject to the pleading requirements under Rule 9(b) of the Federal Rules of Civil Procedure. *Spool*, 520 F.3d at 185 (citing *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004)). Rule 9(b) requires a party alleging "fraud or mistake" to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In a civil RICO action, "[a]llegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, and where and when they took place, and should explain why they were fraudulent." *Spool*, 520 F.3d at 185 (quotation marks and alterations omitted). Moreover, although Rule 9(b) provides that intent

---

[4] As provided in 18 U.S.C. § 1961(1), "racketeering activity" includes mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343.

11

"may be alleged generally," Fed. R. Civ. P. 9(b), a complaint must include "some factual basis for conclusory allegations of intent." *Beck v. Mfrs. Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987) (*abrogated on other grounds by United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989)).

In this case, plaintiff's mail and wire fraud allegations concern NYCDEP communications with plaintiff in an effort to collect water arrearages in connection with a property located in Brooklyn and owned by plaintiff and Margaret during their marriage. Dkt. No. 1 at 8-9, 14. There are no allegations, however, that tie Margaret, Robert Martin, or Eric Channing to attempts by the NYCDEP to contact plaintiff concerning the water bills. The closest the complaint comes to connecting the defendants to those collection efforts is an allegation that, in the spring of 2009, Margaret called plaintiff at his home in Alabama and that, later that year, during the fall of 2009, the NYCDEP began calling plaintiff about the water bill. Dkt. No. 1 at 8. Plaintiff's allegation that Margaret's phone call "was a RICO predicate act of wire fraud" is speculative and conclusory and not sufficient to state a plausible claim. Similarly, plaintiff's allegations that the NYCDEP sent plaintiff letters concerning the arrearages on the Brooklyn property "at Margaret Brewer's instigation" do not satisfy Rule 9(b)'s particularity requirements concerning intent or motive. Although it is

12

obvious that the couple's marriage did not end amicably, there are no allegations in the complaint explaining defendants' motives or intent behind harming plaintiff in the manner described throughout plaintiff's complaint.

Turning now to plaintiff's allegation that defendants committed extortion, under 18 U.S.C. § 1961(1) extortion constitutes racketeering activity if, like robbery, it is "chargeable under State law and punishable by imprisonment for more than one year[.]" 18 U.S.C. § 1961(1). In New York, the crime of coercion in the first degree, which is a class D felony punishable by at least one year in prison, N.Y. Penal L. § 70.00, provides, in relevant part, as follows:

> A person is guilty of coercion in the first degree, when he or she commits the crime of coercion in the second degree,[5] and when:

---

[5] In relevant part,

> [a] person is guilty of coercion in the second degree when he or she compels or induces a person to engage in conduct which the latter has a legal right to abstain from engaging in . . . by means of instilling in him or her a fear that, if the demand is not complied with, the actor or another will . . . [p]erform [an] act which would not in itself materially benefit the actor but which is calculated to harm another person materially with respect to his or her health, safety, business, calling, career, financial condition, reputation or personal relationships.

N.Y. Penal L. § 135.60(9).

13

>1. He or she commits such crime by instilling in the victim a fear that he or she will cause physical injury to a person or cause damage to property; or
>
>2. He or she thereby compels or induces the victim to:
>
>   (a) Commit or attempt to commit a felony; or
>
>   (b) Cause or attempt to cause physical injury to a person; or
>
>   (c) Violate his or her duty as a public servant.

N.Y. Penal L. § 135.65.

Liberally construed, plaintiff's complaint alleges that credit reporting agencies transferred debt onto plaintiff's credit report that was incurred by Margaret and Robert Martin. Dkt. No. 1 at 7, 12. Although it is not clear whether plaintiff contends that defendants induced the credit reporting agencies to transfer the debt or whether plaintiff alleges that the credit reporting agencies induced plaintiff to pay a debt that did not belong to him, neither scenario plausibly alleges coercion under New York State law. Nowhere in the complaint is it alleged that defendants took any action, directly or indirectly, against plaintiff by instilling fear in plaintiff or a third party.

As was noted above, plaintiff's complaint alleges that defendants committed robbery, extortion, wire and mail fraud, bribery, and "theft of a

14

U.S. [p]assport." *See, e.g.,* Dkt. No. 1 at 2. In order to state a plausible civil RICO claim, the complaint must plausibly allege that defendants committed two predicate acts as defined in 18 U.S.C. § 1961(1). *Spool*, 520 F.3d at 183. Even assuming plaintiff's complaint in this case plausibly alleges that any of the defendants committed the crime of bribery,[6] as was discussed above, the allegations in the complaint do not plausibly allege that defendants committed any of the other alleged crimes. For that reason, I recommend plaintiff's complaint be dismissed.

C. <u>Whether to Permit Amendment</u>

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could not "determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not

---

[6] Simply for the sake of brevity, I have not analyzed whether the complaint plausibly alleges that defendants committed bribery.

required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, although I am exceedingly skeptical that plaintiff could amend his complaint to state a plausible and timely civil RICO claim against any of the named defendants, in deference to his *pro se* status, I recommend that leave to amend be granted.

If plaintiff chooses to file an amended complaint, he is informed that any such amended pleading will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d

16

Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted)).

### D.  Plaintiff's Request for Access to CM/ECF

In light of my recommendation that plaintiff's complaint be dismissed, plaintiff's request for access to CM/ECF is denied without prejudice at this juncture. Plaintiff may renew the motion in the event that (1) the assigned district judge grants plaintiff leave to amend his complaint, (2) plaintiff avails himself of that opportunity, and (3) the court accepts any amended complaint for filing after reviewing it again in accordance with 28 U.S.C. § 1915(e).

### III.  SUMMARY, ORDER, AND RECOMMENDATION

While plaintiff's IFP application reflects that he qualifies for that status, his complaint is not sufficient as this juncture to survive review under 28 U.S.C. § 1915(e). Accordingly, it is hereby

ORDERED that plaintiff's *in forma pauperis* application (Dkt. No. 2) be GRANTED; and it is further

ORDERED that plaintiff's request for access to the Case Management/Electronic Case Filing system (Dkt. No. 5) be DENIED without prejudice; and it is further respectfully

17

RECOMMENDED that plaintiff's complaint (Dkt. No. 1) be DISMISSED with leave to replead.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[7] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated: April 27, 2018
Syracuse, New York

_____
David E. Peebles
U.S. Magistrate Judge

---

[7] If you are proceeding *pro se* and are served with this order, report, and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order, report, and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).